## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

Case No:

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and
STATE FARM FIRE AND
CASUALTY COMPANY,

       Plaintiffs,

v.

COMPLETE CARE CENTERS, LLC,

       Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and State Farm Fire and Casualty Company ("State Farm Fire") (collectively, the "State Farm Plaintiffs") bring this Complaint against Defendant Complete Care Centers, LLC ("Complete Care") and allege as follows:

1.    On July 10, 2020, the State Farm Plaintiffs commenced litigation in the United States District Court for the Middle District of Florida against Complete Care and its two owners Marc Ott ("Dr. Ott") and Bret Scheuplein ("Dr. Scheuplein"), in a case captioned *State Farm Mutual Automobile Insurance Company v. Complete Care Centers, LLC*, Case No. 6:20-cv-01240-WWB-EJK,

1

Compl., ECF No. 1 (M.D. Fla. July 10, 2020) ("*Complete Care I*"). A copy of the Complaint from *Complete Care I* is attached as **Exhibit 1**.

2.      In *Complete Care I*, the State Farm Plaintiffs sought redress from an unlawful and fraudulent scheme orchestrated by Complete Care, its predecessors Integrative Physical Medicine, Central Florida Imaging, and Interventional Associates, and their owners Dr. Ott and Dr. Scheuplein to obtain payments from the State Farm Plaintiffs through the submission of thousands of medical bills and medical records for services purportedly provided to individuals eligible for Personal Injury Protection ("PIP") and Medical Payments Coverage ("MPC") benefits (collectively, "No-Fault Benefits") under the State Farm Plaintiffs' automobile insurance policies. *See*, *e.g.*, **Exhibit 1** ¶¶ 1-13.

3.      The State Farm Plaintiffs' alleged, *inter alia*, that Integrative Physical Medicine, Central Florida Imaging, Interventional Associates, and Complete Care engaged in a general business practice of waiving or failing to collect copayments or deductibles in violation of the Insurance Fraud Statute (section 817.234(7)(a), Florida Statutes) as an inducement for patients to appear for unnecessary treatment. *See id.* ¶¶ 125-130.

4.      On January 17, 2023, during the first day of trial, United States District Judge Wendy Berger addressed a legal issue that the Parties were unable to resolve in the Pretrial Stipulation—the interpretation of the Insurance Fraud Statute. *See* **Exhibit 2** at 2-4. (Joint Notice to Identify Remaining Legal Issues That Were Not Resolved in the Parties' Corrected Pretrial Stipulation). Judge

Berger ruled in the State Farm Plaintiffs' favor and found Complete Care's practice

of deferring the collection of copayments and deductibles from patients who

retained an attorney or were contemplating a bodily-injury claim violated the

Insurance Fraud Statute:

> [I] didn't read anything in the statute that said -- that added the word "defer payment" or "defer collection of copayments." It appears to me pretty clear that if there is a bodily injury settlement or if there is a verdict and then those patients are seen by a doctor, they can waive copayments as a part of the settlement or the verdict. **But there's nothing in this statute that allows a party – that allows a service provider to <u>waive</u> the collection of copayments or <u>defer</u> collection of copayments.**
>
> ...
>
> Unless you have some supplemental insurance that covers the copayments so you don't have to pay the copayment, you have to pay the copayment.
>
> Now, if there's been a settlement or a verdict, in those situations, then the doctors are allowed -- or the service providers are allowed to waive it. But **absent that there's nothing in the statute that indicates that they can be waived** and probably because it's impossible for them to make some sort of determination on the merits. They're just medical doctors. They're there to treat a patient. They're not there to determine whether or not, you know, this patient's got a claim against someone. That's why it's waived. If that issue's already been decided, it takes it out of their hands. Otherwise, they have to -- they have to collect the copayments.

*See* **Exhibit 3** (Jan. 17, 2023 Hr'g Tr. at 20:8-16; 28:17-29:5) (emphasis added).

5.    The evening following Judge Berger's ruling, the Parties settled

*Complete Care I*. *See* **Exhibit 4** (Settlement Agreement).

6.    Complete Care, however, failed to abide by the terms of the Settlement

Agreement, which led the State Farm Plaintiffs to file the case captioned *State*

*Farm Mutual Automobile Insurance Company v. Complete Care Centers, LLC*, Case No. 6:24-cv-00379-JSS-EJK, Compl., ECF No. 1 (M.D. Fla. Feb. 22, 2024) ("*Complete Care II*"). *See* **Exhibit 5** (Complaint).

7.     During *Complete Care II*, the State Farm Plaintiffs learned for the first time Complete Care is continuing to engage in the general business practice of deferring the collection of copayments and deductibles for patients treating under their PIP coverage, which Judge Berger found was unlawful and violated the Insurance Fraud Statute.

8.     In response to the State Farm Plaintiffs' interrogatory requesting Complete Care "[i]dentify all changes and/or revisions to Complete Care's copayment, coinsurance, and/or deductible collection practices since January 17, 2023," Complete Care responded on October 21, 2024, that its "[o]verall business practices regarding copayment, coinsurance, and/or deductible collection have been consistent before and after January 17, 2023." *See* **Exhibit 6** at 5-6 (Complete Care's Answers to Plaintiff's First Set of Interrogatories).

9.     As a direct and proximate result of Defendants' unlawful and fraudulent conduct, the State Farm Plaintiffs incurred damages of at least $7.4 million in PIP benefits paid to Complete Care.

10.     This action asserts a common law claim for unjust enrichment and a statutory claim under the Florida Deceptive and Unfair Trade Practices ("FDUTPA") (sections 501.201-501.213, Florida Statutes) to recover actual damages of at least $7.4 million paid to Complete Care since January 17, 2023, plus

costs and reasonable attorneys' fees for violations of FDUTPA. This action also seeks a declaratory judgment that the State Farm Plaintiffs are not liable for any unpaid charges that Complete Care submitted, or caused to be submitted, to the State Farm Plaintiffs to the extent the charges relate to claims in which services were unlawfully rendered, fraudulent, or otherwise non-reimbursable under the No-Fault Law (as defined below).

## I.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (a) a substantial part of the events giving rise to the State Farm Plaintiffs' claims occurred in this judicial district; and (b) Complete Care resides in this judicial district and is a resident of Florida.

## II.    THE PARTIES

### a.    Plaintiffs

13.    State Farm Mutual is a citizen of the state of Illinois. It is incorporated under the laws of Illinois, with its principal place of business in Bloomington, Illinois. State Farm Mutual is authorized to conduct business in Florida and issues automobile insurance policies in Florida.

14.    State Farm Fire is a citizen of the state of Illinois. It is incorporated under the laws of Illinois, with its principal place of business in Bloomington,

Illinois. State Farm Fire is authorized to conduct business in Florida and issues automobile insurance policies in Florida.

### b.    Defendant

15.    Complete Care is a Florida limited liability company, formed on August 30, 2012, with its principal place of business at 555 Winderley Place, Suite 105, Maitland, FL 32751. Dr. Ott and Dr. Scheuplein are the only members of Complete Care. Dr. Ott is a citizen of Florida and resides in Seminole County, Florida. Dr. Scheuplein is a citizen of Florida and resides in Orange County, Florida.

## III.    Relevant Background

### a.  Insurance Benefits Under Florida Law

16.    Under the Florida Motor Vehicle No-Fault Law (the "No-Fault Law"), each automobile owner or lessee is required to maintain, and each insurer is required to issue, a minimum amount of personal injury protection insurance coverage payable without regard to who is at fault in causing an accident. *See* Fla. Stat. §§ 627.730-627.7405. Automobile insurers like the State Farm Plaintiffs are required to provide PIP benefits of at least $2,500, and up to $10,000 if the patient is determined to have an EMC, for losses resulting from injuries arising out of the ownership, maintenance, or use of a motor vehicle.

17.    Under this coverage, insurers are required to pay 80% of all reasonable expenses for medically necessary medical, surgical, x-ray, dental, and rehabilitative services related to injuries caused by the accident up to the

6

applicable cap of either $2,500 or $10,000. *See* Fla. Stat. § 627.736(1)(a). The remaining 20% is the insured's copayment.

18.     The State Farm Plaintiffs are required to pay or deny claims for PIP benefits within 30 days, and they may be ordered to pay interest and attorney's fees if they fail to pay the amount determined to be owed within that 30-day time period. *See* Fla. Stat. § 627.736(4)(b) and (d).

19.     Neither an insurer nor an insured is required to pay a claim or charge: (i) for services or treatment that were not lawful at the time rendered; (ii) to any person who knowingly submits a false or misleading statement relating to the claim or charges; or (iii) for any bill or statement that does not substantially meet the billing requirements set forth in the No-Fault Law. Fla. Stat. § 627.736(5)(b)(1)(b)-(d). In this context, the No-Fault Law's billing requirements provide—among other things—all PIP billing must, to the extent applicable, comply with the instructions promulgated by the Centers for Medicare & Medicaid Services ("CMS") for the completion of CMS-1500 forms, as well as the guidelines promulgated by the American Medical Association ("AMA") in connection with the use of CPT codes. *See* Fla. Stat. § 627.736(5)(d). The CMS guidelines for the completion of CMS-1500 forms make clear that, in Box 31 of the CMS-1500 form, health care providers must set forth the name of the individual who either personally performed or directly supervised the underlying health care service. *See* Medicare Claims Processing Manual, Chapter 26, Item 31. Accordingly, health care providers that misrepresent, in their PIP billing, the identities of the individuals

who personally perform or directly supervise the underlying health care services, or the nature, extent, and medical necessity of the underlying services, are not entitled to receive PIP benefits. *See* Fla. Stat. § 627.736(5)(b) and (d).

20.    In the context of the No-Fault Law, "lawful or lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." *See* Fla. Stat. § 627.732(11).

21.    Complete Care secured assignments of PIP benefits from the State Farm Plaintiffs' insureds. Complete Care used these assignments to submit claims and charges directly to the State Farm Plaintiffs for services and treatments rendered to their insureds. *See* Date of Service Summary, attached as **Exhibit 7**.

## IV.    Complete Care Continued to Violate the Insurance Fraud Statute Post-Settlement

22.    To induce patients to commence and continue treatment, Complete Care systematically disregarded its obligation under Florida law to collect copayments and deductibles from patients.

23.    The No-Fault Law requires automobile insurers, such as the State Farm Plaintiffs, to pay 80% of all reasonable charges. *See* Fla. Stat. § 627.736(1)(a). The remaining 20% copayment is the obligation of the insured. As United States District Judge Robert Scola has recognized:

> When copayments and deductibles are not collected, healthcare providers have less incentive not to administer excessive and unnecessary care. Correspondingly, "if insureds are required to pay a deductible every time they visit a medical clinic, they will be less likely to make unnecessary visits to the medical clinic."

8

*State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 446 F. Supp. 3d 1032, 1051 (S.D. Fla. 2020) (quoting *United Auto. Ins. Co. v. Florida Wellness & Rehab. Ctr.*, 08-20348-CIV, 2009 WL 10667729, at *2 (S.D. Fla. Feb. 11, 2009)).

24.    In reality, to incentivize patients to appear for unnecessary treatment, some PIP clinics waive (or never intend to collect) copayments or deductibles from the patients and agree (or intend) to collect only the fees received from insurers as payment in full.

25.    The Insurance Fraud Statute expressly makes the "general business practice" of waiving or failing to collect copayments or deductibles "insurance fraud." *See* Fla. Stat. § 817.234(7)(a). In determining whether a clinic has engaged in such general business practice, the Insurance Fraud Statute provides "consideration shall be given to evidence of whether the physician or other provider made a good faith attempt to collect such deductible or copayment." *Id.*

26.    In addition to the express prohibition of the Insurance Fraud Statute, the general practice of waiving copayments or deductibles also creates a misrepresentation regarding the clinic's "usual and customary charge" in contravention of the No-Fault Law. *See* Fla. Stat. § 627.736(5)(a) (providing a clinic cannot charge an insurer an amount that "exceed[s] the amount the person or institution customarily charges for like services or supplies.").

27.    In *Complete Care I*, the State Farm Plaintiffs alleged Complete Care failed to make a good-faith effort to collect copayments and deductibles in violation of the Insurance Fraud Statute. *See* **Exhibit 1** at ¶¶ 125-130.

28.     Complete Care moved for summary judgment on this issue, relying in part on an Affidavit submitted by Complete Care's Chief Financial Officer, Alex Petit, which described Complete Care's copayment and deductible collection practices. *See* **Exhibit 8**.

29.     According to the Affidavit, Complete Care "provides medical services to patients with injuries sustained as the result of automobile accidents" and that "[m]ost of these patients are represented by attorneys practicing personal injury law and representing them in a pending or contemplated claim arising from an automobile accident." *Id*. at ¶¶ 4-5. The Affidavit further states, "Complete Care [sic] business practice is to exercise its right and responsibilities of waiving and or deferring collections as part of a bodily injury settlement or verdict[.]" *Id*. at ¶ 17.

30.     Judge Berger denied Complete Care's Motion for Summary Judgment and held:

> [A] reasonable jury could conclude that Complete Care had a general business practice of waiving or making no effort to collect copayments and deductibles from any of its patients with insurance coverage. Moreover, as Plaintiffs note, a jury could find that the general practice of deferring collection—even for patients that have not yet filed, and may not file, a lawsuit—could support a finding that Defendants did not make a good faith attempt to collect copayments and deductibles in accordance with the statute.

*State Farm Mut. Auto. Ins. Co. v. Complete Care Centers, LLC*, No. 6:20-CV-1240-WWB-EJK, 2022 WL 20439277, at *11 (M.D. Fla. July 5, 2022).

31.     Complete Care's copayment and deductible collection practices were then addressed on January 17, 2023, the first day of trial. Judge Berger rejected

Complete Care's interpretation of the Insurance Fraud Statute and ruled Complete Care's practice of deferring the collection of copayments and deductibles violated section 817.234(7)(a). *See* **Exhibit 3** (Jan. 17, 2023 Hr'g Tr. at 20:8-16; 28:17-29:5).

32.     The State Farm Plaintiffs presumed Complete Care discontinued its practice of deferring the collection of copayments and deductibles following Judge Berger's ruling.

33.     However, when the State Farm Plaintiffs received Complete Care's interrogatory responses on October 21, 2024, they learned for the first time Complete Care has not corrected its unlawful practices and remains out of compliance with Florida law. Specifically, Complete Care responded its "[o]verall business practices regarding copayment, coinsurance, and/or deductible collection have been consistent before and after January 17, 2023." *See* **Exhibit 6** at 5-6 (Complete Care's Answers to Plaintiff's First Set of Interrogatories).

34.     Thus, Complete Care failed to make a good-faith attempt to collect copayments and deductibles post-settlement and through to the present, including by routinely deferring the collection of copayments and deductibles.

## V.     COMPLETE CARE CONCEALED ITS UNLAWFUL AND FRAUDULENT CONDUCT

35.     Complete Care is obligated legally and ethically to act honestly and with integrity. Florida law governs the conduct of physicians and chiropractors who provide services in the state of Florida. *See, e.g.*, Fla. Stat. §§ 456.072, 458.331, and 460.413 (collectively, the "Disciplinary Statutes"). Pursuant to the Disciplinary

Statutes, the following acts can result in disciplinary action against a physician and chiropractor:

> a.  Making misleading, deceptive, or fraudulent representations in or related to the practice of the licensee's profession;
>
> b.  Making deceptive, untrue, or fraudulent representations in or related to the practice of a profession; and
>
> c.  Exercising influence on the patient or client for the purpose of financial gain of the licensee or a third party.

*See* Fla. Stat. §§ 456.072(1)(a), (m), and (n), 458.331(1)(k) and (n), and 460.413(1)(k) and (n).

36.    Moreover, the Insurance Fraud Statute "imposes a duty of disclosure as it explicitly prohibits preparing or making any written statement that is intended to be presented to any insurer in connection with any claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or misleading information concerning any fact material to that claim." *See State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1303 (S.D. Fla. 2018) (citing Fla. Stat. § 817.234(1)(a)(2)).

37.    Engaging in the general business practice of waiving, or otherwise not making a good-faith attempt to collect, patient copayments or deductibles "constitute[s] a material omission and insurance fraud[.]" Fla. Stat. § 817.234(7)(a).

38.    In addition, Complete Care submitted its medical bills on a CMS-1500 form. The healthcare practitioners at Complete Care signed Box 31 of the form

certifying the statements on the back of the form applied to each bill Complete Care submitted to the State Farm Plaintiffs. *See* Date of Service Summary, attached as **Exhibit 7**. The backside of the form states "[a]ny person who knowingly files a statement of claim containing any misrepresentation of any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties." Thus, by signing the CMS-1500 forms that were submitted to the State Farm Plaintiffs, Complete Care certified its claims were honest, truthful, complete, and lawful.

39.    Moreover, the State Farm Plaintiffs' 9810A insurance policy specifically excludes coverage "for any person who, or organization making claim or seeking payment that, has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy." (Emphasis removed).

40.    Despite their duty to act honestly, with integrity, and in accordance with Florida law, Complete Care submitted, or caused to be submitted, to the State Farm Plaintiffs bills and supporting documentation that were false, misleading, incomplete, deceptive, and fraudulent because they represented Complete Care's claims were for legitimate, lawful, and reimbursable medical services, when in fact, they were not because Complete Care was operating in violation of the Insurance Fraud Statute. Complete Care submitted the bills and supporting documentation to the State Farm Plaintiffs to induce them to pay benefits to which Complete Care knew it was not entitled.

41.    As a result of Complete Care's false statements and omissions in the bills and supporting medical records they submitted to the State Farm Plaintiffs, the State Farm Plaintiffs paid for unlawful and non-compensable services.

42.    The State Farm Plaintiffs are under statutory and contractual duties to pay claims for PIP benefits within 30 days, and they may be ordered to pay interest and attorney's fees if they fail to pay the full amount owed within that time period. *See* Fla. Stat. §§ 627.736(4)(b) and (d). Complete Care's fraudulent and unlawful scheme was successful because of precisely how the State Farm Plaintiffs are required to adjust claims for PIP benefits.

43.    Complete Care developed and implemented its unlawful and fraudulent scheme to take advantage of the State Farm Plaintiffs and the Florida PIP claims environment. Complete Care knew the efficient operation of a system of insurance requires prompt processing of individual claims. Thus, Complete Care designed a scheme that could go undetected in an individual claim.

44.    Each bill and its supporting documentation, when viewed in isolation, did not reveal its fraudulent and unlawful nature. The fraudulent and unlawful nature of Complete Care's bills was only revealed after the State Farm Plaintiffs had the opportunity to explore Complete Care's copayment and deductible collection practices in *Complete Care II*. Only then did it become apparent Complete Care was operating in violation of the Insurance Fraud Statute.

45.    Before this point, the State Farm Plaintiffs did not discover and could not have reasonably discovered their payments to Complete Care were based upon

fraudulent and unlawful conduct. The submission of fraudulent bills and supporting documentation were affirmative acts by Complete Care that prevented the State Farm Plaintiffs from discovering the truth.

46.    The bills and supporting documents that Complete Care submitted, or caused to be submitted, to the State Farm Plaintiffs in support of the unlawful charges at issue, combined with the material misrepresentations and omissions described above, were designed to and did cause the State Farm Plaintiffs to rely on them to their detriment. As a result, the State Farm Plaintiffs have incurred damages of more than $7.4 million.

## VI.    CLAIMS FOR RELIEF

### First Cause of Action
(Against Complete Care for Unjust Enrichment)

47.    The State Farm Plaintiffs incorporate, adopt, and re-allege as though fully set forth herein, each and every allegation in paragraphs 1 through 46 above.

48.    In each claim described in **Exhibit 9**, the State Farm Plaintiffs conferred a benefit upon Complete Care by paying its claims, and Complete Care voluntarily accepted and retained the benefit of those payments.

49.    The State Farm Plaintiffs' payments constitute a benefit of which Complete Care was aware.

50.    When the State Farm Plaintiffs paid PIP benefits based upon facially valid claims and charges that Complete Care submitted, or caused to be submitted,

the State Farm Plaintiffs reasonably believed they were legally obligated to make such payments.

51.    The circumstances are such that it would be inequitable to allow Complete Care to retain the benefit of the monies paid by the State Farm Plaintiffs because Complete Care knowingly submitted, or caused to be submitted, to the State Farm Plaintiffs charges for services that were not lawful when they were rendered. Complete Care also knowingly submitted false or misleading statements relating to its claims or charges and violated its duty of disclosure by failing to advise the State Farm Plaintiffs it was operating in violation of the Insurance Fraud Statute.

52.    Consequently, the State Farm Plaintiffs and their insureds were not required to pay Complete Care's claims or charges. *See* Fla. Stat. § 627.736(5)(b)(1)(b)-(c) ("An insurer or insured is not required to pay a claim or charges: . . . [f]or any service or treatment that was not lawful at the time rendered; [or] [t]o any person who knowingly submits a false or misleading statement relating to the claim or charges[.]).

53.    Similarly, the State Farm Plaintiffs' 9810A insurance policy specifically excludes coverage "for any person who, or organization making claim or seeking payment that, has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy." (Emphasis removed).

54.    As a direct and proximate result of the above-described conduct, the State Farm Plaintiffs have been damaged and Complete Care have been unjustly enriched by more than $7.4 million.

WHEREFORE, the State Farm Plaintiffs respectfully request this Court enter judgment in their favor and award compensatory damages in an amount to be proven at trial, interest thereon, and costs against Complete Care, and grant such other relief as the Court deems just and appropriate.

**Second Cause of Action**
(Against Complete Care for Violations of FDUTPA)

55.    The State Farm Plaintiffs incorporate, adopt, and re-allege as though fully set forth herein, each and every allegation in paragraphs 1 through 46 above.

56.    In each claim described in **Exhibit 9**, Complete Care engaged in unfair and deceptive acts and practices in the conduct of trade and commerce, in violation of FDUTPA. *See* Fla. Stat. §§ 501.201-501.213.

57.    Complete Care's unfair and deceptive practices include violations of the Insurance Fraud Statute. *See* Fla. Stat. § 817.234.

58.    Complete Care violated the Insurance Fraud Statute by engaging in a general business practice of waiving (or failing to make a good-faith effort to collect) copayments and deductibles.

59.    The Florida Insurance Fraud Statute provides in relevant part:

It shall constitute a material omission and insurance fraud, punishable as provided in subsection (11), for any service provider, other than a hospital, to engage in a general business practice of billing amounts as its usual and customary charge, if such provider

17

has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge[.]

Fla. Stat. § 817.234(7)(a).

60.    Complete Care violated the Insurance Fraud Statute because Complete Care: 1) failed to make a good-faith attempt to collect copayments and deductibles from the State Farm Plaintiffs insureds; and 2) violated its duty of disclosure by failing to advise the State Farm it was operating in violation of the Insurance Fraud Statute.

61.    Complete Care also knowingly presented, or caused to be presented, a false claim for payment each time it presented, or caused to be presented, charges for services that were not lawfully rendered in violation section 626.9541(1)(u), Florida Statutes.

62.    These violations of the Insurance Fraud Statute and section 626.9541(1)(U) are *per se* FDUTPA violations.

63.    In addition, Complete Care's above-described conduct was deceptive in that it was likely to mislead a consumer acting reasonably under the circumstances to the consumer's detriment by representing the charges were lawful when they were rendered. Moreover, Complete Care's general business practice created a misrepresentation regarding Complete Care's usual and customary charges.

64.    Further, Complete Care's above-described conduct was unfair. The conduct was contrary to Florida public policy and was unconscionable, immoral,

unethical, oppressive, and unscrupulous. This conduct produced no benefits to consumers or competition. *See* Division of Invest. & Forensic Servs., *Anti-Fraud Best Practices 2022* at 6 ("It is widely understood that insurance fraud depletes an insurer's resources and the losses incurred from fraud can impact consumers in the form of higher insurance premiums.").

65.    As a result of Complete Care's deceptive and unfair practices, the State Farm Plaintiffs were aggrieved and suffered actual damages in excess of $7.4 million.

66.    The State Farm Plaintiffs seek an award of attorney's fees under section 501.2105(1), Florida Statutes.

WHEREFORE, the State Farm Plaintiffs respectfully request this Court enter judgment in their favor and award compensatory damages in an amount to be proven at trial, interest thereon, attorney's fees, and costs against Complete Care, and grant such other relief as the Court deems just and appropriate.

### Third Cause of Action
(Against Complete Care for Declaratory Relief)

67.    The State Farm Plaintiffs incorporate, adopt, and re-allege as though fully set forth herein, each and every allegation in paragraphs 1 through 46 above.

68.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

69.    There is an actual case and controversy between the State Farm Plaintiffs and Complete Care, as to all claims and charges submitted, or caused to be submitted, by Complete Care to the State Farm Plaintiffs for PIP benefits that

19

have not been paid or were allegedly underpaid, including, but not limited to, the claims set forth in **Exhibit 9**. To the extent any such claims and charges that are pending as of the date of this Complaint, or which are submitted to the State Farm Plaintiffs during the pendency of this litigation, are for services and treatments that were not lawful at the time rendered as a result of Complete Care's violations of the Insurance Fraud Statute, or for which Complete Care knowingly submitted a false or misleading statement relating to the claim or charges, the State Farm Plaintiffs contend no such claims and charges are owed under section 627.736(5)(b)(1)(b)-(d) and the 9810A policy.

70.    There is a bona fide, present, and practical need for a declaration as to all such claims and charges.

WHEREFORE, the State Farm Plaintiffs respectfully request a judgment declaring Complete Care is not entitled to reimbursement for any of the unpaid or allegedly underpaid charges for services purportedly performed at Complete Care and submitted to the State Farm Plaintiffs to date and through the trial of this case, including but limited to the claims set forth in **Exhibit 9**, and for supplementary relief, interest, and costs as this Court deems equitable, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), the State Farm Plaintiffs demand a trial by jury of all issues so triable.

Dated: April 3, 2025                    By: _David I. Spector_
                                         David I. Spector, **Trial Counsel**

Florida Bar Identification No. 086540
James J. Duffy, Esq.
Florida Bar Identification No. 68662
**HOLLAND & KNIGHT LLP**
777 South Flagler Drive, Suite 1900 West
West Palm Beach, FL 33401
Telephone: (561) 833-2000
Facsimile: (561) 650-8399
E-mail: david.spector@hklaw.com
            james.duffy@hklaw.com

*Attorneys for the State Farm Plaintiffs*